Just to give you a sense of how we will be proceeding, we will first hear Kingate, then we will recess for a few minutes, and then we will return with a panel to hear the day calendar, the panel with Judge Hall, Judge Sack, and myself. So first, we will hear Kingate. Thank you, Your Honor. May it please the Court, David Barrett for the plaintiffs in Kingate. I am going to, unless the Court has other questions, focus my argument on three issues. First, that SLUSA does not apply to claims brought under foreign law. Second, that none, since foreign law does apply here, that none of plaintiff's claims brought under Bermuda or BVI law are barred by the reflective loss argument. And third, that at a minimum, plaintiffs should have the right to amend or replead their claims if there are any issues as to whether they are sufficient to state a claim under BVI, Bermuda law. Now, let me ask you some questions about that third issue, which is of considerable concern to me. Is it a matter of repleading, or is it a matter of arguing? Let me just pursue this for a moment. If I understand correctly, the district court's view was that before this case came up on appeal, the defendants moved to dismiss under SLUSA. And in the course of that motion, they argued that foreign law applies. And the plaintiff responded to that motion, responded to the motion to dismiss basically under SLUSA, saying, A, BVI law does not apply, New York applies, and you shouldn't dismiss under SLUSA. But you did not make the argument to the district court, if you rule that foreign law applies, then SLUSA doesn't apply. And then the case came up on appeal on the assumption by the district court that New York law applies, and we kept that same assumption, and we made our ruling assuming that New York law applies, and then it went back to the district court, then said, well, BVI laws. And now you are arguing, well, if BVI law applies, then SLUSA doesn't apply. And the district court said, well, you should have made that argument when the motion was made to dismiss under SLUSA, which was combined with arguments by the defendant that foreign law applies. So if, for example, the district court had ruled directly upon that motion as it was briefed, and it said, I rule, I find that BVI law applies, and I find that BVI claims as well as New York claims, and you would then come up and say, whoa, wait a minute, if BVI law applies, SLUSA shouldn't apply, the district judge would have said, why didn't you make that argument before I ruled? Why are you making it after the ruling? And although a lot of different things happened in the meantime, the district court is making the same argument now, and why isn't that something that's within the district court's ample discretion with respect to forfeiture? I'm sorry, that was a very long question, but I hope you at least understood what I'm asking. I certainly understand the point, Your Honor, and I think there are a few answers. One is that the way that the defendants actually presented the arguments the first time in the district court was, you say we're under New York law, SLUSA bars your claims. That's in fact what the district court ruled on. I know, but did they say BVI law applies? Separately, and apart from SLUSA, they said BVI law applies. That was on the table. The district court never ruled on that. It's very clear, I think, from—I know the district court didn't rule on it. And this court said, in the appeal, we assert only claims under state law. The district court did no choice of law analysis at that time. You're talking about things that happened after, under the district court's reasoning, your obligation to raise the point that if foreign law applies, SLUSA doesn't apply, after you have the obligation to assert that. Your Honor, I think that the reality was that that was a hypothetical and academic issue at that point. But in any case, in any case, whatever one sort of comes out on that issue, this court now has the authority to decide that issue. It is a pure issue of law. It was addressed on—even though the district court found waiver, it went on to decide that SLUSA issue on the merits of SLUSA's applicability. You now have a situation in this circuit where two district judges, Judge Rakoff and Judge Bass, have come to diametrically opposed views on that issue, so it's an uncertain issue in the circuit. This panel extensively considered the history, the purpose, the interpretation of SLUSA in the last appeal, so I think we're all very familiar with the arguments. And the Court has discretion, even if arguably there might have been a waiver, which I don't think there was under these circumstances. It was the defendants who raised BVI law that they raised it as a separate argument. With respect to the merits of the issue, whether SLUSA applies to claims brought under foreign law, I think that is a very clear—there's a very clear and simple answer to that. The statute on its face defines state to mean one of the 50 United States and certain other territories. It clearly does not say that SLUSA applies to foreign law claims. Your adversary, of course, says that a security class action based on foreign law is just as non-federal as a class action based on state law. In your view, I take it that that's not what the statute says. That's exactly right, Your Honor. I mean, in this whole SLUSA area, as you know, we are focused very much on the literal words of the statute, like in connection with. And I think when Congress says state, they mean state, and they certainly know how to define the state or jurisdiction to mean a foreign country. I'm sorry? They did define it. Exactly. And I'm saying they have the ability to include a foreign country if they wanted to. They didn't do that. Let me turn then to the question of even if SLUSA does apply, it does not cover any of the claims that are alleged in the operative complaint now, the second amended complaint. Judge Batts agreed with our view on that with respect to all of the except for claims for negligent misrepresentation against PwC and Citi Hedge. And with respect to those claims, Your Honor, going back to the Kinggate, the first Kinggate decision by this Court, we believe that on that, the district court got it wrong. The negligent misrepresentations claims against PwC and Citi Hedge, not against the Kinggate defendants. We concede those would be barred if SLUSA applies, because those claims against the Kinggate defendants involved false claims of false conduct that involved Madoff directly. With respect to PwC and Citi Hedge, the claims are that they made misstatements about their own actions, that the audit was conducted in accordance with GAAP, that Citi Hedge followed appropriate standards for administering a fund, calculating the net asset value, and so on. Those are misstatements that were made about their own actions. They do not depend at all on allegations of false conduct that ties the defendants into Madoff, and therefore they are what the Court defined as Group 4 claims, very much like the example of the auditor hired by the customers of a broker who adopts a negligent audit. But with respect to those claims, what about the BVI Johnson standing? Well, that's a separate issue, Your Honor. I'm just speaking with respect to SLUSA. If we agree with you on SLUSA, then we would, what, send it back on the false conduct claims? I don't think so, Your Honor. If you agree with us on SLUSA that it doesn't apply, what we would ask you to do is to send it back. We would re-allege the false conduct claims, because SLUSA would no longer bar them, and we would do that under BVI law, which we believe we can do very easily, those state claims under BVI law. But aren't you barred under BVI? No, certainly not with respect to those fraud inducement claims, Your Honor. Let me talk for a minute about the reflective loss rule. What the reflective loss rule does, and I think there may be a lot of confusion here, there's a lot of language in the decisions. The experts on both sides cite different language in the same decisions, sometimes by different judges who offered opinions in the same decisions, and this Court has to make a prediction about what the highest court in this case would be, the Supreme Court of the UK, actually, the old House of Lords, would do if it were presented with this case. And I think the starting point for that analysis actually is the law of the jurisdiction that we're sitting in. What you really have here is a classic issue of direct claims versus derivative claims. They use different terminology, but it really boils down to the same thing. And I think it is absolutely clear from the complaint in this case that we are pursuing direct claims that we allege based on the plaintiff's relationship to these defendants and their direct dealings with these defendants. But that aligns perfectly with our jurisprudence on derivative claims. I don't know that it does, Your Honor, and they, as I say, phrase a number of things differently, but if you really look at the substance of the factors that they're taking into account, it is asking the same kinds of questions. Were the funds directly injured by the conduct here? No, they weren't. The plaintiffs were directly injured. In fact, the alleged misconduct, misstating various facts that induced plaintiffs to invest, benefited the funds. They got investments. They got more money, not less, as happened to the plaintiffs. That the funds benefited from the alleged inducement so that they are... That's correct, Your Honor. In addition, Your Honor, the way the defendants phrase the argument based on the foreign cases is that what we are suing for is diminution in value of our shares, diminution in value of the funds. But if they're diminishing in value, why isn't the fund also diminishing in value? That may be, Your Honor, but their focus, which is entirely on the loss, if you think about it, defendants, doesn't make any sense for a couple of reasons. First of all, we know from this Court's earlier decisions in the Picard litigation that you cannot perpetuate Madoff's fraud by attributing a value to the hedge fund shares after they were purchased. This Court said that doing that perpetuates Madoff's fraud. It perpetuates the idea that these shares had value. Our claim is that these shares had zero value from the very time they were purchased, and therefore, there couldn't be any diminution in value because it was zero to start with. Now, we didn't learn about... Didn't the funds get as nailed, I won't use a more specific term, but the funds got as nailed. So, basically, if you look at the way the damages calculate out, the answer is they did better than our clients did. Our clients are only net losers, and the funds on a fund basis include net winners. And so, the fund losses are actually smaller. The losses are always mathematically smaller at the fund level than they are at the plaintiff level. And so, you have this asymmetrical loss. Am I correct in my understanding that although the district court technically stated that it dismissed the Slusa claims on standing grounds in its discussion, it implies that plaintiffs would have standing under BVI Bermuda Law, but that these claims are precluded by Slusa? I believe that's correct, Your Honor, and I believe the experts come pretty close if they don't entirely agree on the point that the Slusa precluded claims, we would have standing. In other words, under BVI Law, there is standing to bring a traditional fraud claim. And that's just, I would say, the clearest indication that the injury is to the plaintiff, not to the fund. I want to make one more point, which is that the logic of defendants' position on reflective loss has to lead to an absurd result, namely that investors would never have a claim for damages in a case in which they were induced to invest by the defendant's misconduct. The reason is because you measure damages in that case by the difference between what the plaintiff invested and whatever the value is at the end of the fraud or the other breach of fiduciary duty, negligence, whatever it is. So, you're always going to have a measurement of damages that looks the same, potentially, as the fund's loss, but you can't—and that's the whole point—you can't just look at the damages, because if you do that, by definition, damages for a bad investment are loss in value of the investment. And certainly there would be no reason to have all this elaborate law in the British Commonwealth talking about reflective loss if the simple answer was, well, you're suing for the same thing, loss in value that is measured by something to do with the value of your investment. I'm over my time. Let me ask you something about what, in our earlier Kinggate opinion, would be a Category 5 claim. The claim is about, if I understand correctly, those claims are, along the lines of saying that fees were paid to persons, defendants, who didn't do what they were being paid for. Is that correct? Well, there's that claim. There's also a claim, actually, of mutual mistake. Everybody thought that they were doing something, they were buying something of value, and, in fact, it had zero value. But it's the same thing. It's a restitution claim, Your Honor. That's correct. So if I understand correctly, you are arguing that the complaint is ambiguous as to whether those fees were paid out of pocket by the plaintiff's shareholders or paid by the funds out of the funds that the shareholders had used to buy their shares. And since it's ambiguous in that regard, it can't be assumed that the loss was a loss incurred by the funds, as opposed to a loss incurred directly by the plaintiff to the defendants without involving the funds. But to the extent that you're making that argument, can you in good conscience plead that the shareholders were called upon after they to pay fees directly to the administrators, as opposed to having those fees come out of the fund pool, which would make them arguably fall into Category 1 of the reflective loss analysis? Of the sluice analysis? Yeah. No, of the reflective loss analysis. Oh, I see what you're saying. Yes. Your argument against the reflective loss analysis is the complaint is ambiguous. It doesn't state that the funds paid these fees. It just says the fees were paid and weren't earned. I think the complaint actually does allege a claim that doesn't have that problem. And if it's not clear, that's a good reason why we should be allowed to amend. What the complaint does is it incorporates by reference the various prospectus and some of the other documents. Those documents show on their face that a 5% fee was taken off the top before there was any investment in the funds. A 5% fee for marketing, load, whatever you want to call it. Before what? Before what? In the nature of a load. On a front-end load. A front-end load, exactly. And that that was taken off the top before the 95% ever got to the funds. And that 5% went to these defendants. So we meet the strictest requirement of a restitution claim that the money was paid directly from the plaintiffs to the defendants. And that's not, I mean, taking 5% out off the top, and the plaintiffs would have sent a check to the fund, right? To buy the, who would the? Well, they would have sent a check to, I believe, to Citi Hedge, to the administrator, saying, in a subscription agreement, saying, I'm interested in buying the fund. The terms of the subscription agreement and the prospectus say, before we put any money into the funds, we're going to take 5%. That's what the documents say. That's discussed, I believe, in our reply brief. Are the documents that you rely on in the complaint? I believe so, yes, Your Honor. They're part of the complaint. Yeah, and I can give you the pages. Can you give a reference? Page 60. It's a 5% subscription charge. This is at page 60 of our reply brief. The IMs themselves state that, quote, the subscription charge will be deducted from the subscriber's payment for purposes of determining the net amount available for investment. And does it show to whom the subscriber's payment was made? Show to whom that subscriber's payment was, I believe it went initially, at least, to these defendants, as the marketers, as the managers. Okay, thank you. Thank you, Your Honor. Good morning. May it please the Court, Carmine Bakritsi from Cleary Gottlieb for City Hedge. I'll be addressing SLUSA and a city-specific issue. My colleagues will address Standing and 12b-6. The District Court was correct in identifying the interlocking reasons why plaintiffs failed to state a claim and, otherwise, were precluded by SLUSA on the claims in the complaint. The Court clearly, correctly applied this Court's King Gate I framework in finding that the negligent misrepresentation claims, which were specifically identified by this Court in King Gate I as Group II claims subject to preclusion, were, in fact, precluded, and those claims were alleged as against City Hedge and against PwC. As my adversary indicated, they concede that the negligent misrepresentation claims against King Gate were precluded, and the same analysis applies. If you look at the negligent misrepresentation claim against City Hedge, that's count 24, it specifically talks about false NAVs. The NAVs, the net asset values, are nothing more than the reports that were issued by City Hedge as the administrator that reflected the S&P 100 securities, the covered securities that Madoff supposedly was buying for the funds. So, clearly, this falls under the category of SLUSA-covered activity and was properly precluded by the District Court. Why shouldn't we use the Exchange Act's definition of state to determine whether a SLUSA precludes claims based on foreign law? Because that argument was no longer available to the plaintiffs based on this Court's mandate in King Gate I. If the District Court had gone ahead and accepted that, the District Court would have violated the Court's mandate. The Court's mandate explicitly, which is the full opinion under FRAP 41 and the judgment that issued, the Court's mandate instructs the District Court to, on full briefing, apply the Group 1 to 5 rubric that was set out in King Gate I. It says specifically to find precluded the Group 2 claims. And then, in the judgment issued by the Court, the District Court was instructed to proceed in accordance with the opinion of this Court. But, I mean, if we had done that, if the District Court had done that, but in the meantime, at the same time, had found that BVI law applies and had come back to us, are you arguing that we would have been precluded from saying to the District Court, no, no, when we made that ruling, it was on the assumption that New York law applies. But if BVI law applies, it's a whole different question whether SLUSA applies. And if we concluded that SLUSA doesn't apply to foreign law claims, are you saying that we would nonetheless have been barred from telling the District Court, no, no, we meant under the assumption that New York law applies, that you should follow this? I think if the District Court had concluded that because it was BVI law, SLUSA was not available, it would have been reversible error and it would not have been correct for the Court to affirm. This is the Coudere brothers case. In Coudere brothers, the Bankruptcy Court had found that an argument related to Connecticut choice of law rules had been raised too late by the plaintiff and applied New York choice of law rules. This Court sent it back and said you've got to apply the Connecticut choice of law rules. On remand, the Court looked at that issue and said, oh, well, there's an alternative ground. I already found they raised this too late. They raised this on the reconsideration motion. I'm going to apply Connecticut. That was a reconsideration motion, wasn't it? Right. But on that basis said I'm going to use that ground. And this Court said, no, that is barred by the Court's mandate, the explicit and implicit holdings. And to be clear, the inapplicability of SLUSA, the foreign law claims, was raised by plaintiffs in their briefing in this Court the last time around. Is SLUSA jurisdiction? SLUSA is just about the Court's capacity to entertain a, but one can, yes. And there is a thou shalt not if it falls within certain categories. Correct. But one can always concede facts that might lead to a jurisdictional conclusion. And these plaintiffs are a way of arguments in that relation, in that connection. And so I don't think that's an issue in terms of this. I think the Court below. My question was not, I'm sorry, I didn't want to interrupt your answer. I was just going to repeat that the Court below correctly followed the mandate. And I don't think that can be changed. My question was not whether the district court was required to follow our mandate, but whether if the district court had done so, whether we would have been barred from saying to the district court, no, no, our mandate was based on the assumption that state law applied. It was not intended to apply in the case that foreign law was found to be applicable. Would we have been barred from remanding to the district court, saying you misinterpreted our mandate? I think this Court can always interpret its own rulings, but I think the ruling in King Gate 1 was perfectly clear as to what the Court was supposed to do and what the reasoning of the Court was. So, and I also, obviously, this is the same panel, but one panel of the Court binds future panels. And I think so this Court probably should be seen as being bound by the decision in King Gate 1. And the implicit rulings. This is the Meacham case that went to the Supreme Court, when the Meacham Court said there was an antecedent issue that was either not decided or rejected. And accordingly, we're now at the phase where we're dealing with the issue at hand. So here, there may have been an antecedent question about the applicability of foreign law to SLUSA, but that was not taken up by this Court or accepted. And in fairness, the reason why is because they didn't raise it below to Judge Batts in the first round of the motions to dismiss. So they came to this Court with a waived argument, and the Court did not accept the invitation to take it up. How would you respond to the view that in King Gate 1, what the Court was doing, looked at the legislative history, was to identify SLUSA's purposes as the prevention, and I'm quoting from the opinion, circumvention of TSLRA's limitations, which apply only to federal law claims. So that the precise purpose of SLUSA is not to make federal law the exclusive basis of any security fraud class action, but instead to prevent the evasion of the TSLRA. Well, it's both. It's both to have, and I think there is other language quoted in the decision that talks about federal rule, federal law being the exclusive guide here. And then also it's to stop plaintiffs trying to get around that by bringing in other sources of law. And that logic applies both to a state in the United States or to the foreign law of another country. And also, I think these plaintiffs were always arguing that it was New York law, New York law that applied. And so they should have argued it in the first time around. But if BVI law applies, then SLUSA doesn't apply. Well, looking at it freshly, if you look at the Exchange Act's definition, why doesn't it apply? Well, all the Exchange Act definitions are sort of prefaced by unless context otherwise requires. And I agree, just those black and white words talk about states of the United States. However, if you take the context of what the court was trying to, what the Congress was trying to achieve, I think it easily covers these kinds of claims, which themselves also play off New York rules, including the New York Internal Affairs Doctrine. They could have easily used the word foreign, right? Foreign entities. They could have used it. But they didn't. But I think their intention would have been to cover these types of claims. Otherwise, it doesn't make any sense that Congress would say these kinds of claims can go forward under their own rubric and under various laws, whereas other cases would be channeled into the PSLRA and SLUSA. You're right, it's a potential omission. The United States Supreme Court handled it with the Affordable Care Act. I've never heard of a rule of law that statutes have to make sense. The life of the law is experience. Well, they forbid what they forbid. And they don't forbid other stuff that they didn't forbid. That may be correct, Your Honor, but I would go back to the contextual language in the act itself and the fact that it's clear what the purpose was that they were going after. But also, of course, we're now at the merits to an argument that I think we've long passed, given the procedural history of this case and the mandate and the Cudillo brothers' cases and other cases we cite in our brief. So I think on the preclusion issue, if anything, the district court could have gone farther and this point dovetails with arguments you'll be hearing from my colleagues here, which is, if you look, for example, at Citi Hedge, the arguments keep coming back to the false, the purportedly false NAVs. Those, again, are purported misrepresentations in connection with the covered securities that Madoff was purporting to trade. If you look at their negligence claim against Citi Hedge, where in count 23, they very clearly just took out the word NAV. What is left in that count is nothing but the recounting of the elements of a claim of negligence and the bald statements that Citi is therefore liable. That is both, I would say, not enough to show that they have standing. It's an individual claim, such general assertions, and also fails under Twombly and Iqbal to have any factual heft as to why there's a plausible claim against Citi. And you can do that with various counts of the complaint that shows the problem here. But they're trying to escape SUSA. They really don't have claims against these defendants. The one Citi specific point was the finding on personal jurisdiction. The district court found we had forfeited that argument. That holding, I believe, was error. The motion to dismiss that was made was made prior to Daimler. It was also, for that matter, made prior to Goodyear. Both those decisions came out after the court decided its first motion to dismiss, where you didn't raise the issue. If you look at paragraph 29 of their original complaint, they pled that Citi Hedge Fund in Bermuda was an affiliate of Citi Hedge Delaware, which is registered to do business in New York, and an affiliate of New York, of Citi Group, rather, in New York. They were clearly setting up an argument under the standard that governed in the Second Circuit under the WeWa case, in a case called Cromer in the district court, which involved a hedge fund and a hedge fund administrator, that found that relationships among affiliates could lead to a finding of general jurisdiction over a foreign affiliate to U.S. companies. We didn't have that argument, an argument available to combat that, until Daimler made very clear, you're only subject to general jurisdiction where you are at home. Citi Hedge is at home in Bermuda. And so we have that opportunity. We raised the argument at the first chance we could in the district court. The district court found we had forfeited, because in her view, Daimler just dealt with the situation where you were trying to hold a foreign parent subject to general jurisdiction based on activity of a sub in the United States. But the holding of Daimler is not so limited. The holding of Daimler is that at-home standard, which was not available. So I think if, for whatever reason, you don't affirm on these other grounds, as an alternative basis, to find the case should be dismissed as to Citi Hedge. Thank you. Thank you. Your Honor, it's very sure on behalf of the defendants, I'll be addressing the reflective loss point, as well as a brief comment on comedy as well. The first point I would make is it appears that the plaintiffs, what they're attempting to do is confuse the issue, suggest that the jurisprudence in the UK on this issue is similar to and should be looked at as in the same way that the court would if it were considering this under New York law. That is not the case. There is no confusion. The courts of appeals and the House of Lords have spoken very clearly on this issue about what is precluded under the reflective loss doctrine and made it clear that, in fact, the jurisprudence and the policy decisions that have been laid out by those courts are very different from those in the U.S. And I'm quoting from Day v. Cook, which is a court of appeals case from 2001 and it's cited in our brief. The position in English law differs from the position, as I understand it to be, in the majority of states in the U.S., where the courts exercise more discretion about whether to allow claims and do look at the issue much more directly about who has a cause of action. Here, the focus is on the damages. And when you hear, as I heard, the plaintiffs say, look, by definition, the losses in this case are the amount invested in the shares and whatever was minus whatever was redeemed. That is the paradigmatic case of when the reflective loss doctrine applies. Usually, when plaintiffs are attempting to get out from under the reflective loss doctrine, what you see in the cases is they argue that there are different kind of losses. In some cases, you see where a plaintiff may have borrowed money and had defaulted on a loan separate and apart from the losses in the investment and so had losses that were independent of the losses that the company suffered. Isn't the argument, and I may be misunderstanding, that because the funds benefited from some of these alleged inducements, the funds could not bring the same sort of false conduct claims as plaintiffs? That is one of the arguments that is made. I think Judge Batts correctly addressed this and said, look, to the extent that the funds were, quote, benefited from all this, the shareholders were too. During the entire period leading up to 2008 when the fraud was revealed and the company, the funds lost all their value and the shareholders concomitantly lost the value of their shares, the plaintiffs were allowed to and did redeem shares. And in fact, those people, those shareholders who redeemed more than they invested, the net winners, are excluded, expressly excluded from the class. And that goes to the point that the most fundamental point that the plaintiffs lead with, their experts lead with, and they're briefly with, this argument that the shares were worthless when the investments were made, i.e. 100 cents, the minute they were invested in, 100 cents endowed, the minute they were invested in these shares were lost. Those are our damages. And that is absolutely refuted by, as I think the lower court correctly saw, but on this appeal, you see in their opening brief here, some shareholders suffered no loss at all. That's at page 23 of their brief. If you have an immediate loss and therefore the funds are benefiting and the shareholders aren't, how can it possibly be that some shareholders suffered no loss at all? How can they define their class as those who suffered a net loss in principle from their investments and exclude from their class those who were net winners and make allegations as they do throughout their complaint that the funds had the defendants in this case fulfilled their obligations. And I'm quoting from numerous paragraphs, starting with 198, 199, quote, the funds would have seized transferring investor funds to bail off and redeemed existing investments. The argument doesn't hold up. Either there was money there or there wasn't. And the fact is there was up until the time that there wasn't. Both the funds and the shareholders benefited during a particular period. And those shareholders who pulled out were net winners, benefited a lot. And those are excluded from here. There's a recognition throughout their papers that this argument of an immediate loss is just not what they're alleging and what they're arguing. I would address one other point, which is on this, which is the quote, absurd result. This isn't an absurd result. This is a policy choice that has been made by the courts in the UK. What the courts in the UK have said is where the losses are measured by the loss in value of a company in which shareholders have invested. Those claims belong to the company and the company's creditors. And you see in that, and we've quoted this in our papers, you see this is a simple choice in a limited pie. We decide in the UK that in that circumstance, the company and its creditors will have the right to pursue those claims. Here, and the shareholders will not. We recognize. And the premise of that is number one, that the companies are recognized as separate entities and that a shareholder, when it buys in, it follows the fortunes of the company. It doesn't continue to own the assets of the company. It owns its shares. It follows the fortunes of the company. It comes last. That is the policy choice that the courts, the most senior, most courts, including up to the House of Lords, have made. And that's very different, a very different analysis and a clear analysis and the most clear in a circumstance where what you have is the plaintiffs acknowledging that what they're seeking is the loss in value of their investments. When you say very different, very different from what? I'm sorry, very different from New York law, let's say. I was hearkening back to the first point I made, which was addressing the comment that this is similar to New York law, which was your honest question, which it is not. I'll make a quick point about comedy. We lost on comedy below. We believe that was incorrect. What the court was looking for in its comedy analysis were exceptional circumstances in order to defer to foreign law and foreign proceedings. The Royal and Son Alliance case, the Second Circuit case from 2006, said it best. While exceptional circumstances, which is what the court was looking for below, might be the standard, I'm not quoting at this second, but might be the standard required in other cases, the district court shouldn't have been looking for those circumstances here because, and now I'm quoting, we have recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions, foreign bankruptcy proceedings. A foreign nation's interest in the equitable and orderly distribution of a debtor's property, it deserves particular respect and deference. Accordingly, we have followed the general practice of the American courts and regularly deferred in such cases. No one disputes here that we have foreign bankruptcy proceedings, both for the funds and KML, that there were parallel claims brought against most of these parties. It doesn't, this is under the distinct line of the comedy of courts analysis. No one doesn't require that there be an identity of parties or claims, just substantial similarity. For all those reasons, under that branch of comedy, the comedy of courts, we believe this court should reverse the lower court's finding on that. There's a last point, which is- But in doing so, we determined that the lower court abused its discretion. I don't believe so because what I'm saying is I believe the court applied the wrong standard under the comedy of courts. It's a legal point. For that reason, abused its discretion and needed to be considered. Yes. Under the second prong of comedy, which is comedy of nations, that doesn't require parallel proceedings. It is just whether, the analysis is whether in light of the circumstances, application of U.S. law and U.S. courts would be reasonable. And here we have all foreign plaintiffs, foreign funds, multiple ongoing foreign liquidation proceedings, and now full agreement by all parties that all the claims are governed by foreign law. In that circumstance, we would submit, and the court did not address comedy of nations, we would submit that it is not reasonable. Are you saying the court abused its discretion? Didn't apply the correct standard. As a legal matter, did not apply, didn't consider comedy of nations and should have, and should have dismissed under that grounds. Okay. Thank you. Can I ask you about the category five claims, the same question that I asked plaintiff's lawyer before. He said to me that the complaint alleges that 5% was taken off the top, so that this was a, so that this was a fee paid directly by the plaintiff to the administrator and not an amount that came out of the fund, so that it represented a loss by the fund and therefore not precluded by the standing rules. What response do you have to that? Two responses. One is when you asked for a citation to the complaint, he focused on his plied brief. There was nothing from the complaint. There's no, in other words, you asked for a citation in the complaint where that was alleged. It's not. Well, no, I mean, yes, I'll address the substance. The complaint, I think, is ambiguous on that question. The documents that are incorporated into the complaint are not. And we cited on page 87, footnote 87, the information memorandum that makes it clear the page 87 of what of of our appeal brief, the defendant's appeal, the appellee's appeal. Footnote or page. Sorry, excuse me. You said footnote, and then you said page, right? Just which it's, it's page 87 and footnote 87. That's nice. You always set them up that way. Go ahead. Yes. And I'm quoted, the U.S. dollar shares may be purchased at a price equal to the new asset value per U.S. dollar share, plus any applicable subscription charges. In other words, the amount that was charged for purchasing the shares included subscription charges. There's no dispute about any, there really can be no dispute  that are alleged here. All those were paid by the funds. There's no way those can be alleged that anything is different. But even this 5%, this additional little piece, the, it was clear from the documents that are incorporated in the complaint that those were included in the, in the amount paid for the purchase of the shares. If one last point I'll make. Had a lot of last points. Okay, well, okay. Robert, then I will, I will sit down. Thank you. No, no. If you have a last point. Okay, I do. The, the point about the difference between misrepresentation claims and under the reflective loss rule, whether those should be treated any differently. What, what the court below said, and you see, and you see it throughout the, the argument that these are really inducement claims, although the court correctly pointed out below that that's not really alleged. And I'll put aside the exclusive point for a second, because those would fall within exclusive pretty clearly. But you look at the one of foundational cases. This again has been directly addressed. You look at the foundational cases in the UK that address this issue and in the prudential assurance versus Newman case, which is one, one of the bedrock cases for this. It describes this lockbox example that talks about where there is a deceit. So it puts it in the, in the sort of most egregious set of circumstances, a lie, a deceit practiced on the shareholder in order to obtain a key to a lockbox that's owned by the company. There, the court says that is the exact circumstance where the reflective loss rule does apply. Why? Because we're not looking at the, the, the seat because the losses are those of the company and the, any losses suffered by the shareholder are reflective of those directed by the company. So this idea that the UK courts haven't addressed this issue is just wrong. And I just wanted to make that last point. Thank you. May it please the court, Jody Kleinex from Paul Hastings representing the FIM defendants. I'm going to cover the 12B6 arguments. Separate and apart from Slusa and Stanning, the district court properly determined that none of the claims are viable under, as pleaded under BVI or Bermuda law. I'd like to first put this in a little bit of context to address some of the requests that the plaintiffs have made to replead. As this court is aware, this case was filed over eight years ago. And this is plaintiff's third attempt to plead viable claims against these defendants. This started out as a federal securities case with tag along state law claims. And it has now turned into a case where we have foreign plaintiffs suing foreign defendants, asserting foreign law, where all of the conduct complained about happened abroad. Here we are. And after remand from this court to the district court, the district court made very, very clear to these plaintiffs that they would be going to be given one last opportunity to amend their complaint. That they couldn't group plead against all of these defendants and lump them all together in their allegations. And that they needed to state viable claims against each defendant, knowing that all of the defendants were arguing that foreign law governed these claims. And with the contemplation that the defendants would be making a motion to dismiss the new complaint that they would be filing and filing all new foreign law declarations in connection with that complaint. And despite all of that, the plaintiffs haven't alleged any actual facts that are sufficient to state a viable claim under any of the causes of action they assert against any of these defendants under BVI or Bermuda Law. I'd like to focus very briefly on the third party breach of contract claims. There's no dispute that under Bermuda and BVI Law, third parties have no right to sue for damages under breach for breach of contract. And there's no dispute that the shareholders in the funds are not parties to any of the service agreements that they're trying to sue under. So that claim should be dismissed on the basis that it fails to state a claim. And the district court dismissed it on that basis. With respect to the restitution claims, plaintiffs concede that Bermuda and BVI do not recognize any claim for constructive trust. So count 11 is not viable under any theory against any of these defendants. It's not a claim. Mutual mistake and unjust enrichment are treated as restitution claims, but they don't plead viable restitution claims against any of these defendants for any of the fees that they're trying to recover. First, they can't allege that they were payors of these fees. The payor is the actual party that makes the payment, not an indirect party who makes the payment to a fund and then seeks to recover it from the party that the fund pays. Now, focusing on... Well, wasn't that the answer that your adversary gave to me, that they paid, that 5% off the top that they paid to the administrator, not to the fund, was a payment made directly by the shareholders to the administrator? No. The payor of the fees, when the shareholders subscribe in the funds, they subscribe pursuant to a subscription agreement. And the subscription agreement stated that the share price would be paid in exchange for the fund. Although the administrator may have processed the subscription, the assets were the property of the funds because the funds were the ones that issued the shares. So the plaintiffs paid the funds and under Bermuda and BVI law, the property became the assets of the funds. And then the funds as payors paid out the fees to the service providers. Does the complaint include documents that reflect to whom the check was to be made to pay for the subscription? The checks were all made to the funds. They went into the funds. Is that reflected in the documents that are part of the complaint, that are part of the record here? The... If you take a look at the IMs and you take a look at the subscription charges, let me just... I believe that in the subscription agreement... You can refer us to specific pages. Yes. I apologize, I don't have the particular page off hand. I can provide it in a letter after the argument. Please, please do so. Our expert... There's no dispute that the payors... There is no dispute that the plaintiffs are not the payors of any of the service charges. They don't even argue in connection with their restitution claims that they are the payors, nor do they're experts of the subscription charge, of the service charges. So all of those charges were the property and the assets of the funds or in the case of... Or in the case of FIM, KML. And so those entities were the payors of those fees. They also can't allege a total failure of consideration, which is a necessary component of a restitution claim. Because service and shares were admittably received in exchange for the payments. And under BVI and Bermuda law, the value of what was received is irrelevant. And the... I hope I pronounce this correctly. The Stoksiak-Guzanska case, which is cited at Defendant's Foreign Law Compendium, tab 123, makes this clear. The test for failure of consideration is not whether the promisee received a specific benefit, but whether the promisor performed any part of the contractual duties in respect of which the payment is due. And there's no question that the complaint alleges that each of the service providers who received fees performed services. The complaint that the plaintiffs had is that they didn't do a good enough job according to their allegations. With respect to the... With respect to... I'm sorry. The restitution claims also fail because they can't assert claims where the payments were made pursuant to contracts and all of these fees were made... All of these payments were made pursuant to contracts. They also can't seek restitution from defendants who aren't alleged to have received any of the fees that they're seeking to recover. Let's focus on their claims that are based on a relationship. Can you give a sense of how much more you have? I can cover the claims based on a relationship in less than a minute. Okay. There are only two ways that a duty arises... A fiduciary duty... There are only two ways that a duty can arise. A fiduciary duty only arises under BVI or Bermuda law where a party affirmatively agrees to act as a fiduciary for another and a duty of care only arises where a defendant assumes responsibility to act for the plaintiff or where they have a special relationship. And the only relationships here that are actually alleged in the complaint are between the funds and their service providers or between KML and its consultants or between these entities and their own directors. The IMs and the service agreements, all of which are in the record, make very clear that the service providers contracted to provide services for the funds or in the case of SIM, for KML. All of the service agreements contain anti-assignment and no third-party beneficiary provisions. So to the extent that any duty was owed, it was owed to the funds or KML or from the individual defendants to their own companies. Now, plaintiffs act like there's something like a direct relationship where these defendants assumed a duty directly to them, but nothing like that's pled in the complaint. And the district court looked at each of the allegations where plaintiffs claimed that there were direct interactions with these defendants. And contrary to what the plaintiffs argued these citations stood for, they alleged lack of contact, not actual contact. They only alleged contact amongst each other, not any communications with any shareholder in the fund, let alone all shareholders in the funds, where any of these defendants assumed a direct personal responsibility to act on behalf of a shareholder as opposed to a responsibility to perform their contractual obligations or whatever tort obligations they had for the funds or for KML in the case of FIM. Unless the court has any questions. Thank you. Your Honor, just a few points very briefly. First, with respect to the 5% subscription charge, Judge Duval, on page A973 of the appendix, which I believe is the same citation that the defendants have on page 87, the information memorandum reads as follows. Subscription charge. A subscription charge of up to 5% of the total dollar amount subscribed will be charged on the shares. I'm leaving a little out. The subscription charge, if any, will be retained by the manager. The manager may grant all or part of such charge to dealers and third parties for their solicitation work. Finally, it says the subscription charge will be deducted from the subscriber's payment for purposes of determining the net amount available for investment in U.S. dollar shares. There's no ambiguity. They're taking the 5% off the top. Did it show to whom the check was payable, the check for subscription was payable? I'm sorry. Give us a letter, Your Honor. I don't have that. I don't have that. And then, let me just touch on a few other points. With respect to comedy, this case is the exact opposite of breach of comedy obligations. The district court decided it is going to apply foreign law. It is applying the law of the foreign jurisdiction. The fact that we are in this court is a function of fact that that's where the case was made. The defendants apparently were happy to litigate in this jurisdiction as long as they could keep winning as they did the first time the motion to dismiss was granted. And no one is interfering with anything that's going on in the foreign courts. And as Judge Batts found, these are different. Some of these claims are different. Some of the defendants are different. There simply is no issue of comedy. With respect to the Kinggate 1 framework, whether the negligent misrepresentation claims are Group 2 or Group 4, what counsel very studiously ignored was exactly what I said earlier, that the barred claims against the Kinggate defendants relate to their false statements about Madoff, directly about Madoff. What the claims against PWC and City Hedge allege are negligent misstatements about their own activities. And the example, again, I come back to the example of the accounting firm under Group 4, the accounting firm that was hired by clients of a stockbroker to audit their accounts, which contain covered securities, just what we've got here, except it's a... And the audit is conducted negligently. Yes, there were covered securities involved in the story, but the misstatement did not involve... Lusa says that it must relate to the purchase or sale of covered security, not just that it must relate to covered securities. That's right, Your Honor, that's being connection with. And I'd also point out, if you accept their argument that those claims are Group 4 claims, what you've really done is you've collapsed, counsel as much as said this, you've collapsed the in connection with requirement into the requirement for Group 2 or Group 4, that there be what the court defined as false conduct. And there would have been no reason for the court to have Group 4, for example, if all you had to show, which is really what they said, is that this was in connection with covered securities, because the net asset value or what they were auditing may have somewhere along the line had some covered securities involved. So I... Let me see if I understand correctly. Are you drawing an analogy to a kind of claim in which there was no purchase or sale of securities? But let's say that a person turns the securities over to, or a group, lots of people for class action purposes, turn over securities to a custodian and someone at the custodian, the custodian or some employee of the custodian, embezzles those securities. And so a claim is then brought on a class action basis against an auditor or somebody who is responsible for oversight saying, you failed to do your job properly and to detect the fact that our securities had been stolen. The argument would be made that this would not be covered by SLUSA, even if the securities were covered securities, because it didn't have anything to do with the purchase or sale. It had to do with the failure to see that the securities were missing and were not there. And you're saying this is the same thing, while it might have involved the failure of the purchase or sale by Madoff, it also involved a separate thing of just the absence of the security. Is that the argument you're making? And therefore it doesn't fall within, it doesn't relate to purchase and sale of a covered security, even if it does relate to a covered security. I agree with that, Your Honor. What they were doing, what they were doing was they were in effect valuing the funds. They just like in your example, the auditor was supposed to discover that something had been embezzled. I mean, in fact, that's pretty much our case of negligence against PwC. So yes, it's the same thing. There wasn't a purchase or sale. There was a pot sitting there. They valued it. They did so improperly, negligently. And then they misstated what they had done. With respect to personal jurisdiction, to stick with Mr. Bacuzzi, with respect to personal jurisdiction, all of his citations relate to general jurisdiction, as he mentioned in the course of the argument. What we have, what we can allege here is specific jurisdiction under the New York long arm statute. There was conduct and they vigorously argued there was conduct when they were trying to say that SLUSA applied. They have to say, well, this was all the stuff was going on in New York. And they said that in their SLUSA argument. And all we're saying is, yes, there were sufficient contacts with New York, with Madoff and so forth that City Hedge had. And our claims arise out of that conduct. And therefore, there is specific jurisdiction. We don't have to get to the general jurisdiction issues. The, with respect to, with respect to reflective loss and without going into it in detail. A couple of points. The most general one is that that counsel described this as being a policy choice that's been made by the British Commonwealth course, that you can't pursue claims for loss in value of a company that you invested in. That those are not the claims that we are pursuing. What we are pursuing is the loss of our individual investments that were made based on things that these defendants did that would not have been made or would not have been maintained if the defendants had done their jobs properly. It's not the loss in value of the company. It's the loss in value of the, of the investments. And as I say, if you, if you accept their argument, the rule just swallows up all investor claims. Secondly, at page 28 of our reply brief, which as you know, is the main merits brief on these issues. We quote from a case in 2017 called Kidd against Paul and Williamson's, where a shareholder sued lawyers essentially for malpractice for giving wrongful advice in connection with his sale, the shareholder's sale of some stock in a company called ITS. This is what the English court said. That is a loss which the plaintiff claims to have sustained as a consequence of proceeding to enter into the transaction on the terms agreed. In other words, here the subscription agreement, including the sale of part of his interest in the ITS stock. It is not in any sense, a loss sustained by ITS. If anything, ITS benefited from the share sale because it received an injection of $45 million. So, you know, maybe, maybe there's a, you know, maybe there are foundational cases, but there are also a lot of other cases, which are expert sites. That quotation is an example of one from just this year where the English court explained very clearly that it's not a reflective loss claim in a very much of an analogous circumstance to what we've got here. You know, I think what they're doing is really cherry-picking quotes, cherry-picking facts, and you can't do that. You have to really look at everything the experts say. You have to look at the cases. You have to consider what the real substance is of what's going on. And I think if when you do that, you come to the conclusion that the particular claims that we're asserting here are not barred by the reflective loss rule. Finally, with respect to the repleting request, I just want to be clear about what happened. What the defendants say was our first, if you will, bite at the apple was when a bunch of separate class actions were consolidated in front of Judge Batts, as is the typical practice of a consolidated complaint was filed. That consolidated complaint was the subject of the first motion to dismiss. Then after the remand, we got back to Judge Batts. She made very clear that she wanted that complaint to be slimmed down to the extent that the parties agreed that selusive precluded claims. She didn't want to see those. And we took them out, albeit reserving the right to reinstate them if there was a change in the law, which there has been since now BVI law applies, New York law doesn't apply. And we went ahead and we filed what turned out to be a 96-page complaint with those allegations out. If we were going to plead a claim under BVI law, consistent with our view of the claim, it would have been at least that long again. I mean, our original complaint was about 150 pages when we took out the fraud allegations that got down to 96. But you'd be talking about an enormous complaint that is essentially pleading under almost two different regimes. Is SLUSA in? Is SLUSA out? It would have been confusing. It would have been burdensome. I submit it was not what the judge was looking for. I submit that we followed the judge's instructions as best we could. And now that we know that BVI law applies, a determination, by the way, arguably the judge should have made the first time around, that this is the first opportunity that we have to plead under the law that the court has now determined is the applicable law. And two, I think, lines of authority are important here. One is that under Rule 15, repleading should be liberally allowed. And the only reason that the judge gave for denying repleading was the legal reason that we were barred by the reflective loss rule and we were barred by SLUSA. So it was all legal. There wasn't any issue besides that. And secondly, the principle that when there is a change of the applicable law, you get to get- I thought the judge said that you had failed to make the argument at the appropriate time when the issue of foreign law was first raised in the district court. That was respect to the SLUSA argument, Your Honor. It wasn't with respect to repleading. I think there are two different- they're related, but they're two different things. Thank you very much. Thank you all for your arguments in this challenging case. The court will reserve decision, not surprisingly. And we will recess for a few minutes and then come back.